Filed 12/18/20  P. v. Pinckney CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY PINCKNEY, JR.,<br><br>　　Defendant and Appellant. | B304439<br>(Los Angeles County<br>　Super. Ct. No. BA299868) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bob S. Bowers, Jr., Judge.  Reversed and remanded.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Timothy Pinckney Jr., who was convicted in 2008 of first degree felony murder (Pen. Code, §§ 187, subd. (a), 189),[1] appeals from an order summarily denying his petition for resentencing under Penal Code section 1170.95 following the appointment of counsel and briefing by both parties.  Defendant contends, and the Attorney General concedes, that the trial court erred when it found defendant failed to make a prima facie showing he is eligible for relief.  We reverse the trial court's order, and remand the matter for further proceedings consistent with section 1170.95.

## FACTUAL BACKGROUND[2]

On November 16, 1988, the body of the victim, E.L., was found lying on the ground in the playground area of Manuel Arts High School. (*Pinckney I, supra,* at p. 1.)  The victim's body had been bruised and lacerated.  (*Ibid.*)  Vaginal, genital, and anal samples were collected from the body during a sexual assault examination.  (*Ibid.*)  The following week, officers spoke with a man associated with the victim. (*Ibid.*)  The man told police that on November 16, he observed two men in a car speaking with the victim.  (*Ibid.*)  One of the men hit the victim and pushed her into the car before it drove away.  (*Ibid.*)

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     We recite the factual and procedural background from the record on appeal in this case and our prior opinion affirming defendant's conviction in *People v. Pinckney* (Oct. 22, 2009, B212120) [nonpub. opn.] (*Pinckney I*).

The parties stipulated to the following: semen found on the vaginal swab was from defendant; semen found on the anal swab was from an unknown male; the victim's blood was found on a bench located near her body; and defendant's palm print was found on the same bench. (*Pinckney I, supra*, at p. 1.) In 2006 (over 17 years after the murder), DNA testing matched defendant's DNA to the semen sample. (*Id.* at p. 2.) When interviewed by police, defendant could not provide an explanation for the presence of his DNA in the victim's body and the location of his palm print at the murder scene. (*Ibid.*)

Defendant called a gynecologist and fingerprint expert to testify in his defense. (*Pinckney I, supra*, at p. 2.) The gynecologist testified that sperm found in a woman's vagina generally will last three days, but can sometimes be present for as many as 27 days after intercourse. (*Ibid.*) After reviewing the autopsy report, he concluded the victim had no trauma to her genitalia, which made it "less likely that force was used." (*Ibid.*) However, the gynecologist acknowledged that the absence of damage to the victim's genitalia did not "totally rule out a forcible event." (*Ibid.*) The fingerprint expert testified that other fingerprints not identifiable as defendant's were also left on the same bench near the victim's body, and that it was unclear when defendant had left his print on the bench. (*Ibid.*)

## PROCEDURAL BACKGROUND

In 2008, a jury convicted defendant of first degree felony murder (§§ 187, subd. (a), 189), and found not true the special circumstance

allegation that the murder occurred during the commission of a rape (§ 190.2, subd. (a)(17)).  (*Pinckney I*, *supra*, at p. 1.)  The trial court sentenced defendant to 25 years to life imprisonment.

We affirmed defendant's conviction in *Pinckney I*.  In doing so, we reconciled the conviction with the jury's not true finding as to the special circumstance allegation, as it was "eminently reasonable that the jury was convinced defendant raped the victim [so as to support first degree felony murder], but was unable to determine either that he was the actual killer or that he aided his accomplice in killing [the victim] while possessing the specific intent to kill her."  (*Pinckney I*, *supra*, at p. 4.)  In reaching this conclusion, we noted that the jury had been instructed that "any unlawful killing, intentional or not, constituted first degree murder if it occurred during the commission or attempted commission of a rape."  (*Ibid.*, citing former CALJIC No. 8.21.)  The jury was also instructed that it could find the special circumstance that the murder occurred during the rape true only if it found that defendant was the actual killer, or acted as an aider and abettor with the intent to kill.  (*Ibid.*, citing former CALJIC No. 8.80.)

In 2019, defendant filed a petition for resentencing under section 1170.95, which provides that persons who were convicted under theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), may petition the sentencing court to vacate the conviction and resentence on any remaining counts.  (Stats. 2018, ch. 1015, § 1, subd. (f).)

4

In the petition, defendant checked the boxes indicating that an information had been filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of first or second degree murder because of the changes made to sections 188 and 189.

Defendant also checked the boxes in the petition indicating that he had been convicted of first degree felony murder and could not now be convicted based on the changes in the law because he was not the actual killer; he did not, with the intent to kill, aid, abet, induce, or assist the actual killer in the commission of murder; and he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime. Defendant requested that counsel be appointed on his behalf. The trial court appointed counsel for defendant before he and the People filed additional briefing.

After the parties submitted on the briefs for ruling, the trial court summarily denied the petition, concluding that defendant failed to make a prima facie case for relief under section 1170.95. Having reviewed the case file including our opinion in *Pinckney I*, the court noted that instructions on felony murder and the natural and probable consequences doctrine had been presented to the jury, but that the People relied only on felony murder as a theory of liability. In light of

5

our reasoning in *Pinckney I*,[3] the court found that "defendant was at the very least a major participant as well as a direct aider and abettor, if not the actual killer, in the rape and brutal murder of [the victim]. Furthermore, the forcible rape and savage beating of [the victim] constitutes a reckless indifference to human life."

Defendant timely filed a notice of appeal from the order denying his petition.

## DISCUSSION

1.    *Governing Law*

The legislature enacted S.B. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e).)

---

[3]    The court quoted a portion of *Pinckney I* wherein we reasoned that the facts and circumstances of the crime "tend[ed] to establish that the victim was raped . . . as follows:  (1) she was seen being forced into a vehicle by two men a few hours before her body was found; (2) she had semen in her vagina provided by one male and semen in her anus from another, her pants were partially unbuttoned, and her shirt was turned inside out, strongly suggesting the two abductors had sex with her; and (3) she was savagely beaten to death after engaging in the sexual activity.  In addition, the jury had evidence that defendant was one of the rapists, as he could not explain how his semen came to be inside her vagina or how his palm print was left on the bench that was likely used during her killing." (*Pinckney I, supra*, p. 3.)

S.B. 1437 also "added a crucial limitation to section 188's definition of malice for purposes of the crime of murder." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326 (*Verdugo*), rev. granted, S260493, Mar. 18, 2020.) Under the revised section 188, subdivision (a)(3), "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' [Citations.]" (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135 (*Lewis*), rev. granted, S260598, Mar. 18, 2020.) Section 1170.95, as enacted by S.B. 1437, permits individuals who were convicted of felony-murder or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following S.B. 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).)

A petition for relief under section 1170.95 must include a declaration by the petitioner that he is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should petitioner seek appointment. (§ 1170.95, subd. (b)(2).)

If the petition includes the required information, subdivision (c) of section 1170.95, prescribes "a two-step process" for the court to determine if it should issue an order to show cause. (*Verdugo, supra,* 44 Cal.App.5th at p. 327.) The court first "review[s] the petition and determine[s] if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) The court then appoints counsel, if requested, and reviews the

7

petition a second time after briefing by the parties to determine if petitioner has established a prima facie case for relief. (*Ibid.*; see *Lewis, supra,* 43 Cal.App.5th at p. 1140.) At this stage, the court may review the petitioner's record of conviction to determine whether the allegations set forth in the petition are untrue as a matter of law. (*Verdugo, supra,* at p. 333; *Lewis, supra,* 43 Cal.App.5th at p. 1138, quoting Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2019) ¶ 23:51(H)(1), pp. 23–150 to 23–151.) If the court concludes the petitioner has made a prima facie showing, it must issue an order to show cause. (§ 1170.95, subd. (c); *Verdugo, supra,* at p. 328.)

"Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (*Verdugo, supra,* 44 Cal.App.5th at p. 327, citing § 1170.95, subd. (d)(1).) The parties may rely on the record of conviction or present "new or additional evidence" to support their positions. (§ 1170.95, subd. (d)(3).)

2.    *Analysis*

While a trial court has the power to summarily deny a defendant's petition when the defendant is ineligible for relief as a matter of law (*People v. Smith* (2020) 49 Cal.App.5th 85, 92, rev. granted July 22, 2020, S262835; *Verdugo, supra,* 44 Cal.App.5th at p. 333; *Lewis, supra,* 43 Cal.App.5th at p. 1138), here the record fails to demonstrate defendant's ineligibility. The jury convicted defendant based on a

8

felony murder theory of liability, but found the special circumstance allegation that the murder occurred during the commission of rape not true. (*Pinckney I, supra*, at pp. 1, 4.) To reconcile those findings in our earlier opinion, we noted that while the jury could have found that defendant intended to commit the underlying rape, it also could have been unable to determine whether defendant was the actual killer or acted as an aider and abettor with the intent to kill. (*Id.* at p. 4.)

Thus, our prior opinion establishes that the jury could have found defendant guilty of first degree felony murder based solely on his participation in the underlying rape. As a result, we cannot say as a matter of law that defendant could now be convicted of murder following S.B. 1437's changes to sections 188 and 189. (*Lewis, supra*, 43 Cal.App.5th at p. 1135.) The trial court's weighing of evidence to make a determination of fact not established by the record of conviction constituted reversible error.[4]

---

[4] In light of our conclusion, we do not address defendant's alternative contention that the trial court was prohibited from considering *Pinckney I* as part of defendant's record of conviction.

9

## DISPOSITION

The order summarily denying defendant's section 1170.95 petition is reversed, and the matter is remanded with directions to issue an order to show cause and proceed consistent with section 1170.95, subdivisions (c) and (d).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.